**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH M. KEATING and<br>PAUL W. KETZ, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| REDSPEED ILLINOIS, LLC., REDFLEX<br>TRAFFIC SYSTEMS, INC., CITY OF<br>CHICAGO, and BEA REYNA-HICKEY, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF REMOVAL**

Defendant, Redflex Traffic Systems, Inc. ("Redflex"), by its attorneys and pursuant to 28

U.S.C. §§ 1332(d)(2), 1446 and 1453, hereby provides notice that this cause has been removed to

the United States District Court for the Northern District of Illinois, Eastern Division, from the

Circuit Court of Cook County, Illinois, County Department, Chancery Division:

1.    On July 2, 2010, plaintiffs Elizabeth M. Keating and Paul W. Ketz ("Plaintiffs")

filed a Class Action Complaint ("Complaint") styled *Elizabeth M. Keating and Paul W. Ketz v.*

*Redspeed Illinois, LLC., Redflex Traffic Systems, Inc., City of Chicago, and Bea Reyna-Hickey*,

Case No. 10 CH 28652, in the Circuit Court of Cook County, Illinois, County Department,

Chancery Division.

2.    In the Complaint, Plaintiffs allege, in essence, that the defendants' use of "Red

Light Cameras" to detect and enforce "*de minimus*" violations of traffic laws or ordinances

requiring motor vehicles to stop for red traffic signals violates the Illinois Constitution. (Compl.,

¶ 1.)   Plaintiffs purport to allege state law claims for "P.A. 94-795: Violates the Illinois

Constitution on its Face" (Count I) and "Unjust Enrichment and Restitution" (Count II). A true

and correct copy of the Complaint is attached hereto as Exhibit A.

3.      Plaintiffs purport to bring this action on behalf of a putative class that "may

exceed 100,000 members." (Compl., ¶29.)

4.      Plaintiffs allege that the total damages suffered by the putative class "approaches

or exceeds $200,000,000.00 ($200 million)." (Compl., ¶ 28.)

5.      This Court has jurisdiction of this action under 28 U.S.C. § 1332(d)(2) and

removal is appropriate pursuant to 28 U.S.C. §§ 1446 and 1453.

6.      The Class Action Fairness Act ("CAFA") extends federal jurisdiction to cover

class actions in which the amount in controversy exceeds $5 million, the putative class consists

of more than 100 members, and any putative class member is diverse from any defendant.  28

U.S.C. § 1332(d)(2).  CAFA permits removal by any defendant.  28 U.S.C. § 1453.

7.      Redflex is a primary defendant as that term is used in 28 U.S.C. § 1332(d)(4).  *See*

*Irish v. BNSF Ry. Co.*, No. 08-cv-469-slc, 2009 WL 276519, at *14 (W.D. Wis. Feb. 4, 2009);

*Kearns v. Ford Motor Co.*, No. CV 05-5644-GAF (JTLX), 2005 WL 3967998, at *1, *8 (C.D.

Cal. Nov. 21, 2005) ("primary defendant" under CAFA "is any [defendant] with direct liability

to the plaintiffs."); *Manson v. GMAC Mortgage, LLC*, 602 F. Supp. 2d 289, 296-97 (D. Mass.

2009) ("Courts generally agree that the term 'the primary defendants' means that all primary

defendants must be citizens of the state concerned."); *In re Hannaford Bros. Co.*, 564 F.3d 75, 80

(1st Cir. 2009) ("CAFA's home state exception ... encompass[es] only those suits where ... all of

the primary defendants are citizens of the same state. Suits involving a primary defendant who is

not a citizen of the forum state cannot qualify for the exception"); *Anthony v. Small Tube Mfg.*

*Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) ("'the plain language of the statute requires

remand only when all of the primary defendants are residents of the same state in which the action was originally filed.'") (quoting *Robinson v. Cheetah Trans.*, No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006)). *See also* CAFA Senate Report, S. REP. No. 109-14, at 43, reprinted in 2005 U.S.C.C.A.N. 3, 41 (2005) ("Thus, the term 'primary defendants' should include any person who has substantial exposure to significant portions of the proposed class in the action").

8.      During the three year period preceding the filing of the Complaint, similar class actions have been filed against Defendants here (and a Respondent in Discovery). *See, e.g.*, Am. Compl., *Fischetti v. Village of Schaumburg*, No. 09 CH 12523 (Ill. Cir. Ct., Cook County Ch. Div., June 30, 2010) (claims against Village of Schaumberg alleging due process violations that traffic camera ordinance is unconstitutional), *cf.* Compl. ¶ 24 (listing Village of Schaumburg as Respondent);[1] Compl., *Todd v. City of Auburn*, No. C09-2-24060-4 SEA (King County Superior Court, Wash., June 25, 2009) (unjust enrichment, injunctive, and declaratory claims against Redflex for alleged state constitutional law violations); *Tallan v. City of Heath*, No. 09CV-1934JRS (Oh. Ct. Com. Pl., Licking County, Nov. 5, 2009) (alleging due process violations, unjust enrichment, and violations of state statutes limiting local governments' authority to enact traffic ordinances, and naming Redflex listed as defendant); *Arnold v. City of Chillicothe*, No. 08-CI-000999 (Oh. Ct. Com. Pl., Ross County, Nov. 25, 2008) (alleging contractual "voidness" and ordinance unenforceable as conflicting with state statute, Ohio and federal constitutions, naming Redflex as Defendant, and seeking restitution); *Wittbrot v. City of Springfield*, No. CV 09-711617 (Oh. Ct. Com. Pl., Cuyahoga County, Dec. 1, 2009) (alleging contracts improperly

---

[1] *See also Akbar v. Daley*, No. 09CV1289 (N.D. Ill. Mar. 2, 2009) (pro se Complaint alleging the City of Chicago was discriminatory in placement of the cameras in violation of the equal protection clause; seeking damages for "each citizen who has received a ticket from Jan. 08-Jan.09," without specifically seeking class action status).

intended to generate revenue, due process violations, and naming Redflex as Defendant); *Davis v. City of Knoxville*, No. 177658-3V (Tenn. Ch. Ct., Knox County, April 26, 2010) (alleging municipal ordinance conflicts with state's general law, creating a lack of uniformity, naming Redflex as a defendant); *Ware v. Lafayette City-Parish*, No. 6:08-cv-0218 (W.D. La. Feb. 13, 2008) (alleging violations of constitutional procedural due process rights and violation of state law because ordinances conflict with the uniform provisions of the state highway regulatory act, and naming Redflex as a Defendant); *Conejo v. City of Albuquerque*, No. CV 2007 10434 (N.M. 2nd Jud. Dist., County of Bernalillo, Nov. 30, 2007) (alleging violations of state due process and equal protection claims, and naming Redflex as a Defendant).

9.      This notice of removal is timely because Redflex was served with the Summons and Complaint on July 14, 2010. (Upon information and belief, no defendant was served before July 13, 2010.) A true and correct copy of the Summons is attached hereto as Exhibit B.

10.      Pursuant to 28 U.S.C. § 1446(a), attached hereto are copies of all process, pleadings and orders served upon Redflex in this action: (a) Plaintiffs' Complaint filed in the Circuit Court of Cook County, Illinois (attached hereto as Exhibit A); and (b) Summons issued to Redflex by the Circuit Court of Cook County, Illinois (attached hereto as Exhibit B).

11.      Pursuant to 28 U.S.C. § 1446(d), Redflex is filing written notice of this removal and a copy of the Notice of Removal with the clerk of the state court, and will serve a copy of this notice on all parties to the removed action.

Dated:  August 11, 2010

Respectfully submitted,

REDFLEX TRAFFIC SYSTEMS, INC.


By:     /s/ Jenny S. Kim
        One of Its Attorneys


William Choslovsky (#6224664)
Jenny S. Kim (#6277785)
NEAL, GERBER & EISENBERG LLP
2 North LaSalle Street, Suite 1700
Chicago, Illinois  60602
(312) 269-8000
(312) 269-1747 Facsimile
wchoslovsky@ngelaw.com
jskim@ngelaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH M. KEATING and PAUL W. KETZ, | ) ) ) |
| Plaintiffs, | ) ) Case No. |
| vs. | ) ) |
| REDSPEED ILLINOIS, LLC., REDFLEX TRAFFIC SYSTEMS, INC., CITY OF CHICAGO, and BEA REYNA-HICKEY, | ) ) ) ) ) |
| Defendants. | ) |

**NOTICE OF REMOVAL**

# EXHIBIT A



# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

ELIZABETH M. KEATING and )
PAUL W. KETZ )
)
Plaintiffs, )
)
v. ) Case No.:
)
REDSPEED ILLINOIS, LLC., an )
Illinois corporation, REDFLEX )
TRAFFIC SYSTEMS, INC., a )
foreign corporation, CITY OF )
CHICAGO, an Illinois Municipal )
corporation, and BEA REYNA-HICKEY, )
)
Defendants. )
)
and )
)
GATSO USA INC.; SAFESPEED, )
LLC, CURRENT TECHNOLOGIES )
CORP.; GREGORY A. ZITO; ROY F. )
MCCAMPBELL; ALFRED G. RONAN; )
LTD.; HARRY WILLIAM JONES, JR.; )
ROBERT S. MOLARO & ASSOC.; )
MIGUEL A. SANTIAGO; ILLINOIS )
MUNICIPAL LEAGUE; VILLAGE OF )
ADDISON, ILLINOIS; VILLAGE OF )
BELLWOOD, ILLINOIS; VILLAGE OF )
BENSENVILLE, ILLINOIS; CITY OF )
BERWYN, ILLINOIS; VILLAGE OF )
DEER PARK, ILLINOIS; VILLAGE OF )
DOLTON, ILLINOIS; VILLAGE OF )
EAST DUNDEE, ILLINOIS; VILLAGE )
OF EAST HAZEL CREST, ILLINOIS; )
ELK GROVE VILLAGE, ILLINOIS; )
VILLAGE OF ELMWOOD PARK, )
ILLINOIS; VILLAGE OF FRANKLIN )
PARK, ILLINOIS; VILLAGE OF FORD )
HEIGHTS, ILLINOIS; VILLAGE OF )
FOREST PARK, ILLINOIS; VILLAGE )
OF FOX RIVER GROVE, ILLINOIS; )
VILLAGE OF HARWOOD HEIGHTS, )
ILLINOIS; VILLAGE OF HAZEL )

FILED

10 JUL -2 PM 4: 37

10CH28652

1

CREST, ILLINOIS; CITY OF )
HICKORY HILLS, ILLINOIS; CITY OF )
HOMETOWN, ILLINOIS; VILLAGE )
OF KILDEER, ILLINOIS; VILLAGE )
OF LISLE, ILLINOIS; CITY OF )
LOCKPORT, ILLINOIS; VILLAGE OF )
LOMBARD, ILLINOIS; CITY OF )
MARKHAM, ILLINOIS; VILLAGE )
OF LOMBARD, ILLINOIS; VILLAGE )
OF MELROSE PARK, ILLINOIS; )
VILLAGE OF PALATINE, ILLINOIS; )
CITY OF PALOS HILLS, ILLINOIS; )
VILLAGE OF PALOS PARK, )
ILLINOIS; CITY OF PARK RIDGE, )
ILLINOIS; CITY OF PROSPECT )
HEIGHTS, ILLINOIS; VILLAGE OF )
RICHMOND, ILLINOIS; VILLAGE OF )
RIVERDALE, ILLINOIS; VILLAGE OF )
RIVER GROVE, ILLINOIS; CITY OF )
ROLLING MEADOWS, ILLINOIS; )
VILLAGE OF ROSELLE, ILLINOIS; )
VILLAGE OF ROSEMONT, ILLINOIS; )
VILLAGE OF ROUND LAKE BEACH, )
ILLINOIS; VILLAGE OF )
SCHAUMBURG, ILLINOIS; VILLAGE )
OF SCHILLER PARK, ILLINOIS; )
VILLAGE OF SOUTH CHICAGO )
HEIGHTS, ILLINOIS; VILLAGE )
OF VILLA PARK, ILLINOIS; )
CITY OF WARRENVILLE, ILLINOIS; )
CITY OF WAUKEGAN, ILLINOIS; )
VILLAGE OF WAUCONDA, ILLINOIS; )
VILLAGE OF WAYNE, ILLINOIS; )
VILLAGE OF WHEELING, ILLINOIS; )
VILLAGE OF WESTMONT, ILLINOIS; )
CITY OF WEST CHICAGO, ILLINOIS; )
VILLAGE OF WEST DUNDEE, )
ILLINOIS; VILLAGE OF )
WESTCHESTER, ILLINOIS; VILLAGE )
OF WESTERN SPRINGS, ILLINOIS; )
and VILLAGE OF WORTH, ILLINOIS, )
)
  Respondents in Discovery. )

## CLASS ACTION COMPLAINT

Plaintiffs, Elizabeth M. Keating, and Paul W. Ketz, for themselves and as representatives of the Plaintiff Class described below, by their attorneys, O'Hagan Spencer LLC, for their Class Action Complaint against the Defendants, state as follows:

### I.     INTRODUCTION

1.     The Defendants in this case, along with a cabal of other for profit companies, municipalities, lobbyists and promoters, have initiated a lucrative scheme to employ "Red Light Cameras" ("RLCs"), primarily to generate profit (for private vendors) and to replenish barren municipal coffers, by using technology to enforce mostly *de minimus* violations of the Illinois Vehicle Code on a staggering scale.

2.     However, the Illinois General Assembly's attempt at an enabling statute falls far short of the requirements of the Illinois Constitution, on its face.    As a result, the CITY OF CHICAGO, and all other Illinois municipalities have never had the legal authority to employ an administrative adjudication system or utilize RLCs to enforce ordinary red light violations.

3.     The Plaintiff Class has been forced to pay an estimated $200 million to these municipalities and the for-profit RLC vendors which set up these systems and with which they improperly shared revenue.    This

3

Complaint demands those sums be returned to the vehicle owners and motorists from whom they were wrongfully taken.

## II.  THE PARTIES

4.  Plaintiff, ELIZABETH M. KEATING, is an individual who was, at all relevant times, a citizen of Illinois and a resident of Cook County.

5.  Plaintiff, PAUL W. KETZ, is an individual who was, at all relevant times, a citizen of Illinois and a resident of Cook County.

6.  Defendant  REDSPEED  ILLINOIS  LLC  ("REDSPEED ILLINOIS"), is an Illinois limited liability company based in Lombard, Illinois. It has installed RLCs and operates automated traffic enforcement systems in several Illinois municipalities pursuant to various contracts and agreements.

7.  Defendant, REDFLEX TRAFFIC SYSTEMS, INC. ("REDFLEX U.S."), is a foreign corporation authorized to do business, and doing business, in Illinois and in Cook County. It has installed RLCs and operates automated traffic enforcement systems in several Illinois municipalities, including Defendant, CITY OF CHICAGO, pursuant to various contracts and agreements. It collects revenue from RLC violations in several Illinois municipalities.

8.  Defendant, CITY OF CHICAGO is an Illinois municipality with a population over 1,000,000. In 2003, it began to deploy RLCs and began to assess fees against vehicle owners for red light violations.

4

9.    Defendant BEA REYNA-HICKEY is an individual Illinois resident who was, at all relevant times, the Director of the Department of Revenue for the CITY OF CHICAGO. She is sued in her professional capacity.

### III.    RESPONDENTS IN DISCOVERY

10.    Plaintiffs hereby designate each of the individual, municipal and corporate entities below as Respondents in Discovery pursuant to 735 ILCS §5/2-402.

11.    Plaintiffs and their counsel believe that each of the Respondents designated below, all of whom derive revenue from the RLC business, or directly from the use of RLCs, has information essential to the determination of who should properly be named as additional defendants in this action.

### Red Light Camera Vendors and Promoters

12.    Respondent GATSO USA INC., is a foreign corporation, doing business in Illinois and in Cook County. It is not currently authorized to do so as its corporate authorization with the Illinois Secretary of State has been revoked. It has installed RLCs and operates automated traffic enforcement systems in several Illinois municipalities.

13.    Respondent SAFESPEED, LLC is an Illinois limited liability company authorized to do business and doing business in Illinois and in Cook County. It has installed RLCs and operates automated traffic enforcement systems in several Illinois municipalities.

14. Respondent CURRENT TECHNOLOGIES CORPORATION is an Illinois Corporation authorized to do business and doing business in Illinois and in Cook County. Upon information and belief, it is a part owner of defendant REDSPEED ILLINOIS.

15. Respondent REDFLEX HOLDINGS LIMITED, is a publicly traded Australian company and the corporate parent of REDFLEX U.S.

16. Respondent REDSPEED INTERNATIONAL, LTD., is a privately held United Kingdom company and is, upon information and belief, the corporate parent or majority shareholder of Defendant, REDSPEED ILLINOIS.

17. Respondent GREGORY A. ZITO, is an individual citizen of Illinois and self-described consultant to defendant REDSPEED ILLINOIS.

18. Respondent ROY F. McCAMPBELL, is an individual citizen of Illinois who was an active and early promoter of RLCs for revenue generation purposes. From 2001 until his retirement in early 2010, he was the village administrator for the Village of Bellwood, Illinois. In 2005, he was paid $168,935.00 by Bellwood. Thereafter, Bellwood installed RLCs and his pay, as reported in the Chicago Tribune, "skyrocketed." In 2008 he made $420,589.00 and in 2009 his total cash compensation from Bellwood was $472,255.00.

6

19.     Respondent ALFRED G. RONAN LTD. is, upon information and belief, an Illinois partnership or sole proprietorship.  It is a registered lobbyist in Illinois for Defendant REDSPEED ILLINOIS.

20.     Respondent HARRY WILLIAM JONES, JR., is an individual Illinois citizen and a registered lobbyist in Illinois for Defendant REDSPEED ILLINOIS.

21.     Respondent ROBERT S. MOLARO & ASSOCIATES is, upon information and belief, a sole proprietorship or business of presently unknown type.  It is a registered lobbyist in Illinois for Defendant REDSPEED ILLINOIS.

22.     Respondent MIGUEL A. SANTIAGO is an individual Illinois citizen and a registered lobbyist in Illinois for Defendant REDSPEED ILLINOIS.

23.     Respondent ILLINOIS MUNICIPAL LEAGUE is, upon information and belief, an unincorporated non-profit Illinois association engaged in lobbying and education on behalf of Illinois municipalities.  It is an active promoter of the use of RLCs for revenue generation purposes.

### The Municipal Respondents

24.     Respondents VILLAGE OF ADDISON ILLINOIS; VILLAGE OF BELLWOOD, ILLINOIS; VILLAGE OF BENSENVILLE, ILLINOIS; CITY OF BERWYN, ILLINOIS; VILLAGE OF DEER PARK, ILLINOIS; VILLAGE OF EAST DUNDEE, ILLINOIS; VILLAGE OF EAST HAZEL CREST,

7

ILLINOIS; ELK GROVE VILLAGE, ILLINOIS; VILLAGE OF ELMWOOD PARK, ILLINOIS; VILLAGE OF FRANKLIN PARK, ILLINOIS; VILLAGE OF FORD HEIGHTS, ILLINOIS; VILLAGE OF FOREST PARK, ILLINOIS; VILLAGE OF FOX RIVER GROVE, ILLINOIS; VILLAGE OF HARWOOD HEIGHTS, ILLINOIS; VILLAGE OF HAZEL CREST, ILLINOIS; CITY OF HICKORY HILLS, ILLINOIS; CITY OF HOMETOWN, ILLINOIS; VILLAGE OF KILDEER, ILLINOIS; VILLAGE OF LISLE, ILLINOIS; CITY OF LOCKPORT, ILLINOIS; VILLAGE OF LOMBARD, ILLINOIS; CITY OF MARKHAM, ILLINOIS; VILLAGE OF LOMBARD, ILLINOIS; VILLAGE OF MELROSE PARK, ILLINOIS; VILLAGE OF PALATINE, ILLINOIS; CITY OF PALOS HILLS, ILLINOIS; VILLAGE OF PALOS PARK, ILLINOIS; CITY OF PARK RIDGE, ILLINOIS; CITY OF PROSPECT HEIGHTS, ILLINOIS; VILLAGE OF RICHMOND, ILLINOIS; VILLAGE OF RIVERDALE, ILLINOIS; VILLAGE OF RIVER GROVE, ILLINOIS; CITY OF ROLLING MEADOWS, ILLINOIS; VILLAGE OF ROSELLE, ILLINOIS; VILLAGE OF ROSEMONT, ILLINOIS; VILLAGE OF ROUND LAKE BEACH, ILLINOIS; VILLAGE OF SCHAUMBURG, ILLINOIS; VILLAGE OF SCHILLER PARK, ILLINOIS; VILLAGE OF SOUTH CHICAGO HEIGHTS, ILLINOIS; VILLAGE OF VILLA PARK, ILLINOIS; CITY OF WARRENVILLE, ILLINOIS; CITY OF WAUKEGAN, ILLINOIS; VILLAGE OF WAUCONDA, ILLINOIS; VILLAGE OF WAYNE, ILLINOIS; VILLAGE OF WHEELING, ILLINOIS; VILLAGE OF WESTMONT, ILLINOIS; CITY

8

OF WEST CHICAGO, ILLINOIS; VILLAGE OF WEST DUNDEE, ILLINOIS; VILLAGE OF WESTCHESTER, ILLINOIS; VILLAGE OF WESTERN SPRINGS, ILLINOIS; and VILLAGE OF WORTH, ILLINOIS; (collectively "Municipal Respondents"), are each Illinois municipal corporations and/or municipalities as defined by Article 7, Section 1 of the Illinois Constitution.

25. Upon information and belief, each Municipal Respondent has contracted with one or more RLC vendors, including but not limited to, Defendant REDSPEED ILLINOIS, to install RLCs at road intersections within their jurisdictional limits and collect fees from vehicle owners for alleged violations of the Illinois Traffic Code, or similar municipal ordinances, captured by RLCs. Upon information and belief, most Municipal Respondents installed and began operating RLCs on or after May 22, 2006.

## IV. PLAINTIFF CLASS

26. Plaintiffs ELIZABETH M. KEATING and PAUL W. KETZ, bring this action for themselves and as the representative of a class of similarly situated plaintiffs, described as:

> All persons who received a "Red Light Violation" or "Violation Notice" or similar communication, issued by or in the name of any Illinois municipal corporation or other unit of local government, which alleged or asserted any traffic signal violation of the Illinois Motor Vehicle code or similar municipal ordinance, where such Notice was generated in whole or in part based on images generated by a "Red Light Camera" or Automated Traffic Enforcement System, and who, by reason thereof, suffered an adverse legal consequence, including: being required to pay a fee, fine, penalty or surcharge, or court filing

9

or other legal or administrative fees; incurring attorney fees;
becoming the subject of negative credit reports for unpaid
"violations;" incurring entitlement to statutory damages under
state or federal law as a result; having had driving privileges or
vehicle registration suspended; and/or having a vehicles towed
or immobilized, as a result of unpaid "violations."

27.     Prosecution of this case by way of a class action is a superior
method of resolving these claims, as the average amount at issue here (in
most cases, seeking recovery of $100 for any individual violation notice) is
relatively small. In contrast, any Class member's opportunity costs in
challenging alleged violations at a municipal level, and the much greater out-
of-pocket and opportunity costs for any single member of the Plaintiff Class
to pursue this matter to even a first level of appeal in the Circuit Court, are
substantially greater than the cost of the improperly assessed fee or penalty.

28.     Total damages suffered by the plaintiff class are sizable;
published reports indicate that, through the end of 2009, Defendant, CITY
OF CHICAGO, has collected over $140,000,000.00 ($140 million) in revenue
since it began its RLC program. Upon information and belief, more than 50
other municipalities have since installed RLCs and some are also extracting
over $1 million per year from the Plaintiff Class. Upon information and
belief, the total damages suffered by the Plaintiff Class approaches or exceeds
$200,000,000.00 ($200 million).

29.     The class of Plaintiffs in this class is so numerous that joining
them individually would be impracticable. Upon information and belief the
Plaintiff Class may exceed 100,000 members: published news reports state

10

that the CITY OF CHICAGO alone issued approximately 790,000 "Red Light Violation" notices in 2009.

30.    The claims of the named Plaintiffs are typical of those of all members of the proposed Plaintiff Class. This case involves claims that all violation notices issued are defective under the Illinois Constitution and Illinois law.    Because    the    claims    primarily    involve    the    facial unconstitutionality of the Illinois statute and other issues of state law, the main issues of law are common to all members of the class.    Common questions of law and fact substantially predominate over any questions or law or fact unique to individual Class members.

31.    The named Plaintiffs will fully and adequately represent the interests of all members of the Plaintiff Class, and the damages suffered by the named Plaintiffs, and the manner in which they were harmed, are wholly typical of the members of the Class.

32.    The named Plaintiffs are represented by trial counsel, experienced and competent in all areas of law relating to this Complaint, who are prepared to fully and adequately prosecute this Action on behalf of their clients and on behalf of all members of the Plaintiff Class, as Class Counsel.

33.    Plaintiffs anticipate that administration of this Class, however numerous, will proceed smoothly, aided by the fact that the Defendants and/or the Respondents in Discovery all maintain or have maintained

11

comprehensive electronic records identifying all Class members to whom they have issued Red Light Violation Notices.

34.    Greater than two/thirds (66.67%) of the members of the Plaintiff Class are Illinois citizens.

## V.    FACTUAL BACKGROUND

### Red Light Cameras

35.    The term "Red Light Cameras" (or "RLCs") as used in this Complaint, refers generally to devices which are mounted at or near road intersections that are controlled by what are generally known as traffic lights, traffic signals, stop lights, or red lights (hereafter "traffic signals").

36.    RLCs generally combine sensors which are designed or adjusted to trigger or otherwise note when a motor vehicle has crossed a stop line or otherwise entered a controlled intersection, combined with some type of system for noting the status of the traffic signal at the time the sensor is triggered, the camera or cameras for recording still photographic images and/or a number of successive frames (constituting a "video clip") showing a vehicle entering a signal controlled intersection.

37.    RLCs are typically used by government agencies to detect moving violations by motor vehicles. This Complaint is concerned only with the use of RLCs in Illinois to detect alleged violations of laws or ordinances requiring motor vehicles to stop for red traffic signals, as described more fully below.

12

38.     RLCs are aggressively promoted by vendors, and championed by municipalities, as tools to reduce collisions and improve intersection safety.

39.     The installation of RLCs, without other engineering improvements, does not make intersections safer.

40.     Rear end collisions are the most common type of collision at traffic light controlled intersections in the United States.

41.     Installation of RLCs generally increases the number of rear end and total collisions at intersections in which they are installed in the United States.

42.     Safety at traffic light controlled intersections can often be improved greatly by adjusting upward the duration of yellow lights, at relatively low cost and/or by extending the "all red' duration at an intersection.

43.     Adjusting the timings of traffic signals does not add a steady revenue stream to municipal coffers.

### Use of RLCs in Illinois

44.     Upon information and belief, there were no RLCs in use in the State of Illinois, for traffic enforcement or revenue generation purposes, prior to 2003.

45.     On or before Jun 6, 2003, Defendant, CITY OF CHICAGO, began negotiations with Defendant REDFLEX US to install RLCs at Chicago intersections, and in October 2003, Defendant REDFLEX U.S. and Defendant

13

CITY OF CHICAGO executed the first of several agreements between the two regarding RLCs.

46.     Most other Illinois municipalities did not contract with vendors or install RLCs until after the passage, by the Illinois General Assembly, of P.A. 94-795 in early 2006.    Upon information and belief, several other municipalities, including the Village of Bellwood, also installed RLCs and began issuing red light violation notices before P.A. 94-795 became law.

47.     After the Illinois General Assembly passed P.A. 94-795, which became effective on May 22, 2006, RLC vendors, including Defendants REDSPEED ILLINOIS and REDFLEX U.S., began to aggressively market RLCs and integrated Automated Traffic Enforcement Systems, which included Violation Notice issuance and payment processing systems, to Illinois municipalities in Cook, DuPage, Kane, Lake, Madison, McHenry, St. Clair, and Will Counties.

48.     The exact number and identity of Illinois municipalities which have implemented RLCs is growing continually and is not known to Plaintiffs at present.

### Legal Status of RLCs in Illinois Prior to 2006

49.     In 1997, The Illinois General Assembly enacted P.A. 90-516, which became law effective August 22, 1997.   That Act amended the Illinois Municipal Code.  Since August 22, 1997, and at all times since, 625 ILCS § 5.2.1-2 has provided:

§ 65 ILCS 5/1-2.1-2. Administrative adjudication of municipal code
violations

> Sec. 1-2.1-2. Administrative adjudication of municipal code
> violations. Any municipality may provide by ordinance for a
> system of administrative adjudication of municipal code
> violations to the extent permitted by the Illinois Constitution. A
> "system of administrative adjudication" means the adjudication
> of any violation of a municipal ordinance, **except for** (i)
> proceedings not within the statutory or the home rule authority
> of municipalities; and **(ii) any offense under the Illinois
> Vehicle Code or a similar offense that is a traffic
> regulation governing the movement of vehicles** and except
> for any reportable offense under Section 6-204 of the Illinois
> Vehicle Code.

(emphasis added)

50.     At all times since 1997, and well prior, the Illinois Vehicle Code
has set forth the law regulating the movement of motor vehicles on public
roads in Illinois. The state laws governing motor vehicles facing steady red
signals is contained in Section 11-306 of the Illinois Motor Vehicle Code, at
625 ILCS § 5/11-306(c).

51.     In 1997, the Illinois General Assembly also passed P.A. 90-86,
which became effective July 10, 1997. That section made one narrow
provision for the use of Red Light Cameras, which was codified at 625 ILCS §
5/11-306.5 at all times until its repeal by P.A. 96-745. Between July 10, 1997
and May 22, 2006, this law provided:

> A municipality with a population of 1,000,000 or more may
> enact an ordinance that provides for the use of an automated red
> light enforcement system to enforce violations of this subsection
> **(c) that result in or involve a motor vehicle accident,
> leaving the scene of a motor vehicle accident, or reckless
> driving that results in bodily injury.**

15

This paragraph 5 is subject to prosecutorial discretion that is
consistent with applicable law.

(emphasis added)

52.     On February 25, 2000, the Illinois Appellate Court, 1st District,

First Department, released its published opinion in <u>People ex rel. Ryan v.</u>

<u>Village of Hanover Park</u>, which opinion was published at, *inter alia*, 311

Ill.App.3d 515; 724 N.E.2d 132; 243 Ill.Dec. 823, and 1999 Ill.App.LEXIS 960.

53.     In that case, prosecuted by the Attorney General of Illinois, the

Appellate Court affirmed a Circuit Court ruling that various ordinances of

several municipalities, both home rule and non-home rule, were invalid as

they were inconsistent with and disrupted the uniformity of prosecutions of

motor vehicle moving violations under the Illinois Vehicle Code.     Each

municipal ordinance at issue purported to provide the municipality authority

to issue violation notices and fine motorists for moving violations without

issuing a Uniform Traffic Citation or reporting the offense to the Secretary of

State as required by the Illinois Vehicle Code.

54.     This case only validated an earlier opinion of the Attorney

General that municipal ordinances allowing for "alternative" enforcement of

traffic violations outside the Illinois Vehicle Code are not valid under Illinois

law. The Attorney General's opinion, 1992 Op.Atty.Gen. (92-013) (June 22,

1992) concluded:

For the reasons stated, it is my opinion that the alternative
traffic enforcement ordinances of the type described are void and

16

unenforceable. Such ordinances conflict with comprehensive traffic regulation and enforcement policy set forth in the Illinois Vehicle Code and the Supreme Court Rules on bail in traffic cases, and deny due process of law.

### RLC Enforcement in Chicago Since 2003

55. In spite of these clear pronouncements of law, in July of 2003, the CITY OF CHICAGO adopted Chapter 9-102 to its municipal code, to implement an "Automated Red Light Camera Program" ("ARLCP"), Chicago Code 9-102-010 et seq., The ARLCP provided for a system of linking data generated by RLCs with the City's pre-existing administrative enforcement structure. It initially provided for administrative enforcement on the $90.00 fines for red light violations captured by RLCs, later increased to $100.00.

56. At all relevant times CITY OF CHICAGO has used its ARLCP to detect and prosecute moving violations beyond those authorized by P.A. 90-86 (involving motor vehicle accidents, leaving the scene of an accident, and reckless driving causing personal injury.)

57. Chicago's ARLCP has operated continuously and grown steadily since its inception. Published news reports indicate that this system generated revenue, collected exclusively from Plaintiff KETZ and other members of the Plaintiff Class, as follows:

|  |  |
|---|---|
| 2004 | $45,660 |
| 2005 | $4.7 million |
| 2006 | $12.7 million |
| 2007 | $19.8 million |

17

2008        $44.8 million

2009        $58 million

58.    The CITY OF CHICAGO did not rely on or predicate the continued existence or growth of its RLC enforcement system on the passage of P.A. 94-795 or any similar enabling legislation.

59.    On March 3, 2010 Edward Burke, the chairperson of the Finance Committee for the City Council of defendant CITY OF CHICAGO, described the CITY of CHICAGO'S claims that its ARLCP was educating and deterring drivers as a "myth." He then stated "It's a money machine, that's all. Period."

**Illinois Attempts in 2006 to Authorize Use Of RLCs in 8 Counties.**

60.    On May 22, 2006, P.A. 96-745 ostensibly became law in Illinois. A true and correct copy of P.A. 96-745 is attached hereto as **Exhibit "A"**.

61.    P.A. 96-745 contains no substantive preamble, legislative findings, or statement of purpose.

62.    P.A. 96-745 created 625 ILCS 5/11-208.6, and amended 625 ILCS 5/11-208.3, to ostensibly allow for RLCs, which it terms, "Automated Traffic Law Enforcement Systems." It limited use of RLCs to Cook, DuPage, Kane, Lake, Madison, McHenry, St. Clair, and Will counties.

18

**Plaintiff Paul W. Ketz**

63. On April 26, 2008, a vehicle co-owned by KETZ, but not being driven by him, was photographed by a RLC at or near the intersection of Halsted Street and Belmont Avenue in Chicago.

64. The RLC at issue was provided for and maintained by Defendant REDFLEX U.S.

65. Shortly thereafter KETZ received in the US mail a notice entitled "RED LIGHT VIOLATION" Dated 5/17/08 and bearing Notice No. 5095986950

66. The Notice was issued by the CITY OF CHICAGO Department of Revenue.

67. The Notice was not certified by the signature of any "person authorized by ordinance to issue and serve parking, standing, and compliance violation notices" as required by 625 ILCS 5/11.208.3.

68. The Notice did not list one of the Registered co-owners of KETZ'S vehicle and was not addressed to that co-owner.

69. The images recorded by the RLC which photographed KETZ'S vehicle included a video of at least several seconds duration.

70. The Notice did not include any Copy of the video as required by 625 ILCS 5/11-208.6(d)(6).

19

71.   The Notice was not accompanied by and did not contain any DVD, CD-ROM, videotape or any copy at all of any video images of KETZ'S vehicle.

72.   Fearing the various adverse consequences detailed on the Chicago notice, KETZ paid the $100.00 amount which the notice claimed was due.

73.   Upon information and belief a significant share of the $100.00 KETZ paid was in fact remitted to defendant REDSPEED U.S. pursuant to one or more agreements in effect between CITY of CHICAGO and REDFLEX U.S.

74.   The CITY OF CHICAGO had no legal authority to demand payment from KETZ.

75.   KETZ has suffered damages, or is entitled to restitution of not less than $100.00.

### Plaintiff's Allegations - Elizabeth M. Keating

76.   In late February 2010, KEATING received at her home a one page, computer-generated document bearing the title "Violation Notice" dated 2/22/10 and bearing notice number 1703000085974877.

77.   The Notice implied that it was sent by a municipality, the City of Markham, Illinois, as it bore the legend:

> RED LIGHT VIOLATION NOTICE
> CITY OF MARKHAM, ILLINOIS
> PHOTO ENFORCEMENT PROGRAM

20

78.     In fact, it had been generated and mailed by Defendant, REDSPEED ILLINOIS.

79.     Upon information and belief the Violation Notices prepared by Defendant REDSPEED ILLINOIS for alleged RLC violations in other Illinois Municipalities are identical or substantially similar to those in Markham, and the general allegations made concerning the Notice sent to Plaintiff apply equally to all notices sent by Defendant REDSPEED ILLINOIS to members of the Plaintiff Class.

80.     The Notice was unsigned and was not certified by the signature of any "person authorized by ordinance to issue and serve parking, standing, and compliance violation notices" as required by 625 ILCS 5/11.208.3.

81.     The Notice alleged a red light violation, by a 2006 Honda co-owned by KEATING, on February 18, 2010 at the intersection of 159th Street and Kedzie Avenue in Markham, Illinois.

82.     The Notice did not list the other registered co-owner of the 2006 Honda, and was not addressed to that co-owner.

83.     The Notice was not accompanied by and did not contain any DVD, CD-ROM, videotape or any copy at all of any video images of KEATING'S vehicle.

84.     The Notice stated "Please visit RedLightViolations.com to view video footage of violations, where available."

21

85.    According to the website RedLightViolations.com, any use of the web site constituted acceptance of its written privacy policies and its written terms of use, which purported to restrict and limit plaintiffs' legal rights if they were to actually use the site to view video footage.

86.    Videos on RedLightViolations.com do not play on many personal computers loaded with standard industry hardware and software.

87.    The City of Markham, Illinois entered into a contract on or about October 4, 2007, with Defendant, REDSPEED ILLINOIS, to provide virtually all services related to its RLC system.

88.    Upon information and belief, Defendant REDSPEED ILLINOIS has, in the last five (5) years, entered into similar or substantially identical contracts with approximately fifty (50) Illinois municipalities, including but not limited to those named as Respondents in Discovery herein.

89.    Defendant REDFLEX U.S. has also entered into numerous contracts with Illinois municipalities besides Chicago.

90.    Upon information and belief, Defendants REDSPEED ILLINOIS and REDFLEX U.S., and not the municipalities with which they contract, determine the intersection(s) in a given municipality at which its RLC should be installed.

91.    Upon information and belief, Defendant REDSPEED ILLINOIS' primary consideration in selecting and/or recommending intersections for RLC installation is not safety related, but is instead the frequency of right

22

hand turns on red made at a given approach, (especially where right turns on red are legal), as this would lead to the most technical red light violations and generate the most revenue for Defendant REDSPEED ILLINOIS and REDFLEX U.S.

92.    The Contract between Defendant REDSPEED ILLINOIS and Defendant MARKHAM based REDSPEED ILLINOIS' total compensation on the number of violation notices generated, in violation of 625 ILCS § 5/11-208.6(l).

93.    The Ordinance assesses, for a violation, what is variously referred to as a "fine" or "penalty" of $100.

94.    This fine or penalty has a punitive and deterrent effect, but no compensatory effect, as the Defendants are not damaged by, *inter alia*, "rolling" right turns at an intersection, or red light violations which do not result in injury or property damage.

95.    Upon information and belief, Defendant REDSPEED ILLINOIS drafts the Ordinances for municipalities with which it contracts.

96.    KEATING elected to contest the Notice and requested a hearing date. She was given a May 13, 2010 date.

97.    The Notice directed to KEATING referenced, under "Ordinance Number & Description" the following:

07-0-1893
DISOBEYING TRAFFIC CONTROL SIGNAL

23

98.    In May 2010, KEATING'S undersigned counsel contacted the Markham Public Library reference librarian to inquire if Markham Municipal Ordinances were available for public inspection, and was informed that they were.

99.    On May 12, 2010, counsel attempted to review Markham Ordinance 07-0-1893 (the "Markham Ordinance") at the Markham public library. However, the box of loose materials he was provided did not contain any copy of the RLC Ordinance. The reference librarian advised that they had not received new ordinances for "at least a couple of years."

100.   Counsel then travelled to the Markham City Hall to inspect the Markham Ordinance. He was advised by a Markham official that they could not make it available that day, but that he could fill out an Illinois Freedom of Information Act request and he could get it in a week.

101.   When counsel stated that a municipal ordinance should be available for public inspection, the official waved the request form in his face and stated that Markham had "five business days" to provide it. The official refused to provide the Ordinance sooner.

102.   KEATING and her counsel were thus unable to review the Markham Ordinances before the May 13 hearing date.

103.   On May 13, 2010, KEATING'S counsel appeared at the scheduled hearing at the City of Markham municipal complex.

24

104. The hearing was presided over by hearing officer, Michelle Broughton Fountain, a licensed Illinois attorney.

105. The hearing officer was not impartial. She has financial ties to the Respondent, CITY OF MARKHAM and its officials.

106. The hearing officer has in recent years been one of the largest individual campaign contributors to MARKHAM'S Mayor, David Webb. State records show that the hearing officer has made the following contributions to "Citizens for David Webb.:

| Date | Amount |
|------|--------|
| 5/09/2007 | $600.00 |
| 5/21/2007 | $150.00 |
| 5/15/2008 | $1,500.00 |
| 8/01/2008 | $100.00 |
| 12/23/2008 | $500.00 |
| 4/25/2009 | $1,070.00 |

107. Upon information and belief the hearing officer was recently retained as legal counsel by Respondent CITY OF MARKHAM and was paid by MARKHAM to, *inter alia*, represent the chairman of Markham's Planning Commission in a case brought in 2008 in U.S. District Court against defendant and several individual Markham officials.

108. Upon information and belief the hearing officer was also provided ex parte "training" paid for by Defendant REDSPEED ILLINOIS.

109. At the May 13th hearing, several citizens who appeared to contest violation notices advised the hearing officer that they attempted unsuccessfully to go to the web site to view the alleged violations. The hearing officer made some comments suggesting that the problem might be with the citizens' internet services provider.

110. At the May 13th hearing, KEATING and her counsel had no opportunity to review the Ordinance he was accused of violating, no real opportunity to view the video footage of the alleged violation without risking giving up their legal rights.

111. Approximately 8 to 12 citizen's Violation Notices were called for hearing before KEATING'S on May 13th. At each one, three still images were shown on a screen. The hearing officer asked each citizen if the images showed their car. Once the citizen acknowledged that it was their car, a uniformed police officer sitting at a laptop initiated the playing of a video showing a vehicle at an intersection.

112. Every single one of the videos showed a vehicle making a right turn on a red traffic light.

113. Right turns on red were legal at the intersection(s) shown. In each case the hearing officer adjudged the citizen "guilty" or "liable." To several she said, "I have no choice but to find you liable."

114. The hearing officer did not ask any citizen if there was a defense, or if they had anything to say.

26

115. When KEATING'S case was called, it was determined, after inquiry by counsel, that all the previous cases had not been recorded. KEATING'S case was delayed so a Markham employee could locate a Dictaphone to record the rest of the proceedings.

116. At the hearing, KEATING, through counsel, raised numerous objections, requested evidence which was not provided, and specifically moved to prevent introduction of any video evidence, as she never received a copy of it as required by 625 ILCS § 5/1-208.6(d)(6).

117. KEATING presented uncontroverted documentary and testimonial evidence that at the time her van was captured by the RLC, she was driving her 13 year-old daughter home after emergency orthopedic surgery at the University of Chicago several hours earlier. Her daughter's morphine had worn off and she was in severe pain exacerbated by any motion, *inter alia,* the stopping and starting of the car and all bumps in the road. Counsel asserted a defense of common law necessity.

118. The hearing officer improperly rejected and or overruled each of plaintiff's uncontroverted legal and factual defenses and adjudged KEATING liable.

119. Defendant REDSPEED ILLINOIS subsequently issued a "Notice of Findings Decision and Order." In order to avoid an additional $100 penalty for late payment, KEATING timely paid the $100 fine to the CITY

27

OF MARKHAM, under protest and without waiving her rights to contest the hearing officer's findings in the Circuit Court.

120. Upon information and belief, KEATING'S experience with MARKHAM'S administrative adjudication system is typical of the level of due process afforded to members of the Plaintiff Class who attempt to challenge RLC violation notices in Illinois.

121. KEATING continues to pursue her administrative remedies has since timely filed a petition for Administrative Review, now pending in this Court, naming only the CITY OF MARKHAM and its Traffic Administrator as Defendants.

122. In order to exercise the "rights" afforded to her to challenge the erroneous findings of MARKHAM'S hearing officer by 625 ILCS 5/11-208.3 and the Administrative Review Act, and, so, contest a $100 fee, KEATING had to pay a filing fee of $276.00 and was also required to pay the Clerk of the Circuit Court an additional $30 (plus postage) to "serve" the two summons on the Defendants in that action – by certified mail.

## VI.    COUNT ONE
### P.A. 94-795
### Violates the Illinois Constitution on its Face (Action in Equity)

1-122. Plaintiffs repeat and re-allege Paragraphs 1 through 122 of this Complaint as if fully set forth herein.

123. By its terms, P.A. 94-795 only purports to authorize the use of RLCs in alternative traffic enforcement schemes in 8 (of 102) Illinois Counties. 625 ILCS § 5/1-208.6(m) specifically states:

> This Section applies only to the counties of Cook, DuPage, Kane, Lake, Madison, McHenry, St. Clair, and Will and to municipalities located within those counties.

124. The 8 counties listed are not the 8 most populous in Illinois, and were not the most populous at the time P.A 94-795 became law, or at any time since.

125. The most recent estimates (2009) of the U.S. Census Bureau show that Winnebago County, which is not included in P.A. 94-795, has a population greater than both Madison County and St. Clair County.

126. Similarly, the 8 counties chosen for special treatment by P.A. 94-795 are not the 8 largest by motor vehicle registrations, by motor vehicle collisions, or any factor that could be rationally related to any conceivable legislative purpose.

127. The bill which became P.A. 94-795 originated in the Illinois House of Representatives as House Bill 4835 of the 94th General Assembly.

128. The primary proponent of H.B. 4835 in the Illinois General Assembly was Senator John Cullerton, who had sponsored a parallel bill in the State Senate. Although it was the House Bill which the General Assembly passed, on March 3, 2006. The House Bill's sponsor acknowledged, on the floor of the House, the primary role of Senator Cullerton in passing the

bill. At the same time, the sponsor of H.B. 4835 acknowledged that the bill had been drafted by Cullerton in concert with Defendant, CITY OF CHICAGO.

129.   P.A. 94-795 has been described in the media by a state lobbyist as "legislative cover" and was in fact intended to be legal cover intended to protect the CITY OF CHICAGO, after the fact, for the "Automated Red Light Camera Program" it had initiated in 2003 without legal authority.

130.   Following its Second Amendment on February 22, 2006, H.B. 4835 contained most of the language which was in the final version of P.A. 94-795, except that the bill did at that time contain any limitation, whether by geography, population, political boundary, or home rule status, on the ability of an Illinois county or municipality to adopt and implement a RLC ordinance.

131.   The Third Amendment to H.B. 4835 filed on February 28, 2006, for the first time introduced the language bestowing the benefits of RLCs on only   Cook, DuPage, Kane, Lake, Madison, McHenry, St. Clair, and Will Counties, and municipalities located therein

132.   The legislative history for H.B. 4835, including Senate Transcript of March 29, 2006, establishes that certain areas of the state were carved out of the bill at the request of elected officials who, as Senator Cullerton stated on the floor of the Senate, "indicated they didn't want to have this option in their counties."

133. The proper object of P.A. 94-795 is not just the 8 counties listed, but also the municipalities located within those counties.

134. There can be no rational distinction between the need and desirability (or, as plaintiffs contend, the undesirability) of RLCs in municipalities located within the "elite eight" counties, and those located without.

135. Even Plaintiffs concede that RLCs, and statutes authorizing their use, confer an enormous (if improper) benefit on those counties and their component municipalities: the right to generate substantial revenue.

136. Pursuant to the authority ostensibly granted by P.A. 94-795, tiny Richmond, Illinois (McHenry County, population 1,091), has enacted a RLC ordinance and enforcement scheme, while Rockford, Illinois, Winnebago County, (population 157,272) or Winnebago County itself (population 299,709), may not.

137. P.A. 94-795 would allow the Village of Lenzburg (St. Clair County, population 577) to adopt a RLC ordinance, and to implement an enforcement scheme – if, that is, Lenzburg actually had a traffic signal. However, this law would not allow the State capitol, Springfield, or even Sangamon County itself (population 195,716) to do so.

138. There is no rational basis or conceivable reason why P.A. 94-795 discriminates in favor of 8 randomly selected counties, and all municipalities

31

located in those eight counties, and against all similarly situated counties and municipalities in Illinois.

139. There is no rational basis why the clear financial benefits of RLCs to local governments, and the clear financial detriment to numerous owners of vehicles, are applied only in certain parts of the state.

140. P.A. 94-795 therefore constitutes special and/or local legislation in violation of the 1970 Illinois Constitution, Article 4, Section 13.

141. A general law could easily have been made applicable to affect the legitimate objects, if any, of P.A. 94-795. It would have involved removing one sentence from P.A. 94-795.

### Uniformity Clause

142. P.A. 94-795, and the municipal or local ordinances passed in response to and in conformity with it, provide for and impose non-property taxes and/or fees on vehicle owners accused by RLCs of traffic violations.

143. The U.S. Court of Appeals for the Seventh Circuit has recently characterized the fees collected by Chicago's RLC ordinance as "[t]axes ...on running red lights."

144. P.A. 94-795, as described above, does not create a reasonable classification of the objects of the fees or taxes it authorizes as they may only be imposed in Cook, DuPage, Kane, Lake, Madison, McHenry, St. Clair, and Will Counties, or in municipalities within those counties.

32

145.   P.A. 94-795 does not create a reasonable classification of the subjects of the fees or taxes it authorizes only owners of vehicles operated in the 8 counties at issue can ever be subject to the fees.

146.   The owner of a vehicle which make right turns in Waukegan, Illinois, (population 92,066, Lake County), could be assessed for RLC violations, but the owner of a vehicle regularly driven recklessly in Peoria (population 113,107, Peoria County) never will.

147.   P.A. 94-795 thus violates the requirements of reasonableness and uniformity in the 1970 Illinois Constitution, Article 9, Section 2.

### Equal Protection

148.   Because P.A. 94-795 treats similarly situated municipal and individual persons differently, without a rational basis, it denies the guarantee of equal protection of the laws afforded by the Illinois Constitution, Article 1, Section 2.

149.   Approximately 86 percent of the African-American or black population of the state reside in the eight counties singled out for special treatment by the Illinois legislature in P.A. 94-795. This is a higher percentage than that of the overall Illinois population residing in those counties.

150.   The decision of the Illinois General Assembly to include St. Clair County, the smallest county by population singled out in P.A. 94-795, but exclude Winnebago County is a curious one. Winnebago County has more

33

people, vehicles, and traffic accidents than St. Clair County. St. Clair County only has more African Americans (referred to in census documents as "blacks.") St. Clair County is 29.4% black by population in 2008 U.S. Census. Winnebago County has a population that is only 11.4% black. Sangamon County, the next largest county after St. Clair, which is also not singled out by P.A. 94-795, has a population that is just 10.9% black.

151. Upon information and belief, the selection of just 8 of 102 Illinois counties as objects of P.A.94-795 ensures that it will impose disproportionately large adverse effect on one or more protected Classes, and deny equal protection of the law based on location and race.

### Pending Legislation

152. A bill which attempts to modify some sections of the Vehicle Code relating to RLCs, S.B. 935, has passed both houses of the Illinois General Assembly and was sent to the Governor for signature on May 21, 2010.

153. Upon information and belief, S.B. 935 has not, as of the date of filing of this Complaint, been signed by the Governor or enacted as law.

154. S.B. 935 does not correct any of the Constitutional infirmities set forth in this Complaint, and passage of S.B. 935 into law will not moot or otherwise affect the validity of this action, except that the Complaint may require amendment to update citations.

34

### Damages

155.   As a result of the General Assembly passing a Public Act which is unconstitutional, and which, plaintiffs ELIZABETH M. KEATING and PAUL W. KETZ, and all other members of the Plaintiff Class, have suffered direct injury traceable to the defendants.

156.   Only this Court, in granting the relief requested below, can prevent further injury to the plaintiffs, to members of the plaintiff class, and to other vehicle owners who are being added to the plaintiff class on a daily basis.

### Prayer for Relief

WHEREFORE Plaintiffs ELIZABETH M. KEATING and PAUL W. KETZ, for themselves and for the Plaintiff class, pray that this Court:

a.   Issue a declaratory judgment and/or enter an Order declaring that 625 ILCS 5/11-208.6 and those portions of 625 ILCS 5/11-208.2 amended by P.A. 94-795 are unconstitutional on their faces and so are void and a nullity;

b.   Issue a declaratory judgment and/or enter an Order declaring that all ordinances enacted by any municipality or other unit of local government in Illinois which authorizes the use of Red Light Cameras and/or administrative adjudications of moving violations under the Illinois Vehicle Code, including violations of the laws pertaining to traffics signals, whether codified at 625 ILCS 5/11 306 or in similar ordinances, are void and unenforceable; whether such ordinance predated the enactment of P.A. 94-795 or not;

c.   Enjoin defendants from any further activity to collect fees, fines, taxes or penalties involved with their various RLC enforcement schemes in Illinois;

35

d.  Order restitution of all funds illegally and improperly collected by defendants to plaintiffs and to all members of plaintiff class; and,

e.  Such further relief as this Court deems Just.

## COUNT TWO
## UNJUST ENRICHMENT AND RESTITUTION
### (Action at Law and Equity)

1-156. Plaintiffs repeat and re-allege Paragraphs 1 through 156 of this Complaint as if fully set forth herein.

157.  Defendant CITY OF CHICAGO, the Municipal Respondents, and the for-profit RLC vendors with whom they shared revenue, including Defendants REDSPEED ILLINOIS and REDFLEX U.S., have never been legally entitled to collect any sums from Plaintiffs, or any members of the Plaintiff Class, for RLC violations.

158.  Defendants, CITY OF CHICAGO, the Municipal Respondents, and the for-profit RLC vendors with whom they shared revenue, including Defendants REDSPEED ILLINOIS and REDFLEX U.S., have improperly obtained and kept money belonging to Plaintiffs and to all members of the Plaintiff Class.

159.  This Court has the power to award restitution to Plaintiffs, in both law and in equity, to rectify the unjust gains and enrichment of Defendants.

36

## Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a. Enter an order that Defendants shall refund to Plaintiffs all sums they have paid in fees, fines, taxes or penalties assessed in connection with any RLC enforcement schemes;

b. Enter an order requiring legal and equitable restitution to Plaintiffs of all such sums;

c. Award damages to Plaintiffs as allowed by law; and,

d. Such further relief as this Court deems just.

## JURY DEMAND

Plaintiffs request trial by jury for all issues and counts so triable.

Respectfully submitted,

O'Hagan Spencer LLC

By:

Patrick J. Keating
O'Hagan Spencer LLC
One E. Wacker Drive
Suite 3400
Chicago, IL 60601
312-422-6100 – Phone
312-422-6110 – Fax

37

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Patrick J. Keating

38

Public Act 094-0795

HB4835 Enrolled                                    LRB094 19060 DRH 54562 b

AN ACT concerning transportation.

**Be it enacted by the People of the State of Illinois, represented in the General Assembly:**

Section 5. The Illinois Vehicle Code is amended by changing Sections 6-306.5, 11-208, 11-208.3, and 11-306 and adding Sections 1-105.2, 11-208.6, and 11-612 as follows:

(625 ILCS 5/1-105.2 new)
Sec. 1-105.2. Automated traffic law violation. A violation described in Section 11-208.6 of this Code.

(625 ILCS 5/6-306.5) (from Ch. 95 1/2, par. 6-306.5)
Sec. 6-306.5. Failure to pay fine or penalty for standing, parking, or compliance, or automated traffic law violations; suspension of driving privileges.

(a) Upon receipt of a certified report, as prescribed by subsection (c) of this Section, from any municipality stating that the owner of a registered vehicle has: (1) failed to pay any fine or penalty due and owing as a result of 10 or more violations of a municipality's vehicular standing, parking, or compliance regulations established by ordinance pursuant to Section 11-208.3 of this Code, or (2) failed to pay any fine or penalty due and owing as a result of 5 offenses for automated traffic violations as defined in Section 11-208.6, the Secretary of State shall suspend the driving privileges of such person in accordance with the procedures set forth in this Section. The Secretary shall also suspend the driving privileges of an owner of a registered vehicle upon receipt of a certified report, as prescribed by subsection (f) of this Section, from any municipality stating that such person has failed to satisfy any fines or penalties imposed by final judgments for 5 or more automated traffic law violations or 10 or more violations of local standing, parking, or compliance



EXHIBIT
A

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

regulations after exhaustion of judicial review procedures.

(b) Following receipt of the certified report of the
municipality as specified in this Section, the Secretary of
State shall notify the person whose name appears on the
certified report that the person's drivers license will be
suspended at the end of a specified period of time unless the
Secretary of State is presented with a notice from the
municipality certifying that the fine or penalty due and owing
the municipality has been paid or that inclusion of that
person's name on the certified report was in error. The
Secretary's notice shall state in substance the information
contained in the municipality's certified report to the
Secretary, and shall be effective as specified by subsection
(c) of Section 6-211 of this Code.

(c) The report of the appropriate municipal official
notifying the Secretary of State of unpaid fines or penalties
pursuant to this Section shall be certified and shall contain
the following:

(1) The name, last known address as recorded with the
Secretary of State, as provided by the lessor of the cited
vehicle at the time of lease, or as recorded in a United
States Post Office approved database if any notice sent
under Section 11-208.3 of this Code is returned as
undeliverable, and drivers license number of the person who
failed to pay the fine or penalty and the registration
number of any vehicle known to be registered to such person
in this State.

(2) The name of the municipality making the report
pursuant to this Section.

(3) A statement that the municipality sent a notice of
impending drivers license suspension as prescribed by
ordinance enacted pursuant to Section 11-208.3, to the
person named in the report at the address recorded with the
Secretary of State or at the last address known to the
lessor of the cited vehicle at the time of lease or, if any
notice sent under Section 11-208.3 of this Code is returned

Public Act 094-0795

HB4835 Enrolled                          LRB094 19060 DRH 54562 b

as undeliverable, at the last known address recorded in a
United States Post Office approved database; the date on
which such notice was sent; and the address to which such
notice was sent. In a municipality with a population of
1,000,000 or more, the report shall also include a
statement that the alleged violator's State vehicle
registration number and vehicle make, if specified on the
automated traffic law violation notice, are correct as they
appear on the citations.

(d) Any municipality making a certified report to the
Secretary of State pursuant to this Section shall notify the
Secretary of State, in a form prescribed by the Secretary,
whenever a person named in the certified report has paid the
previously reported fine or penalty or whenever the
municipality determines that the original report was in error.
A certified copy of such notification shall also be given upon
request and at no additional charge to the person named
therein. Upon receipt of the municipality's notification or
presentation of a certified copy of such notification, the
Secretary of State shall terminate the suspension.

(e) Any municipality making a certified report to the
Secretary of State pursuant to this Section shall also by
ordinance establish procedures for persons to challenge the
accuracy of the certified report. The ordinance shall also
state the grounds for such a challenge, which may be limited to
(1) the person not having been the owner or lessee of the
vehicle or vehicles receiving 10 or more standing, parking, or
compliance violation notices or 5 or more automated traffic law
violations on the date or dates such notices were issued; and
(2) the person having already paid the fine or penalty for the
10 or more standing, parking, or compliance violations or 5 or
more automated traffic law violations indicated on the
certified report.

(f) Any municipality, other than a municipality
establishing vehicular standing, parking, and compliance
regulations pursuant to Section 11-208.3 or automated traffic

Public Act 094-0795

HB4835 Enrolled                           LRB094 19060 DRH 54562 b

law regulations under Section 11-208.6, may also cause a
suspension of a person's drivers license pursuant to this
Section. Such municipality may invoke this sanction by making a
certified report to the Secretary of State upon a person's
failure to satisfy any fine or penalty imposed by final
judgment for 10 or more violations of local standing, parking,
or compliance regulations or 5 or more automated traffic law
violations after exhaustion of judicial review procedures, but
only if:

    (1) the municipality complies with the provisions of
this Section in all respects except in regard to enacting
an ordinance pursuant to Section 11-208.3;

    (2) the municipality has sent a notice of impending
drivers license suspension as prescribed by an ordinance
enacted pursuant to subsection (g) of this Section; and

    (3) in municipalities with a population of 1,000,000 or
more, the municipality has verified that the alleged
violator's State vehicle registration number and vehicle
make are correct as they appear on the citations.

    (g) Any municipality, other than a municipality
establishing standing, parking, and compliance regulations
pursuant to Section 11-208.3 or automated traffic law
regulations under Section 11-208.6, may provide by ordinance
for the sending of a notice of impending drivers license
suspension to the person who has failed to satisfy any fine or
penalty imposed by final judgment for 10 or more violations of
local standing, parking, or compliance regulations or 5 or more
automated traffic law violations after exhaustion of judicial
review procedures. An ordinance so providing shall specify that
the notice sent to the person liable for any fine or penalty
shall state that failure to pay the fine or penalty owing
within 45 days of the notice's date will result in the
municipality notifying the Secretary of State that the person's
drivers license is eligible for suspension pursuant to this
Section. The notice of impending drivers license suspension
shall be sent by first class United States mail, postage

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

prepaid, to the address recorded with the Secretary of State or
at the last address known to the lessor of the cited vehicle at
the time of lease or, if any notice sent under Section 11-208.3
of this Code is returned as undeliverable, to the last known
address recorded in a United States Post Office approved
database.

    (h) An administrative hearing to contest an impending
suspension or a suspension made pursuant to this Section may be
had upon filing a written request with the Secretary of State.
The filing fee for this hearing shall be $20, to be paid at the
time the request is made. A municipality which files a
certified report with the Secretary of State pursuant to this
Section shall reimburse the Secretary for all reasonable costs
incurred by the Secretary as a result of the filing of the
report, including but not limited to the costs of providing the
notice required pursuant to subsection (b) and the costs
incurred by the Secretary in any hearing conducted with respect
to the report pursuant to this subsection and any appeal from
such a hearing.

    (i) The provisions of this Section shall apply on and after
January 1, 1988.

    (j) For purposes of this Section, the term "compliance
violation" is defined as in Section 11-208.3.
(Source: P.A. 94-294, eff. 1-1-06.)


    (625 ILCS 5/11-208)  (from Ch. 95 1/2, par. 11-208)
    Sec. 11-208. Powers of local authorities.

    (a)  The provisions of this Code shall not be deemed to
prevent local authorities with respect to streets and highways
under their jurisdiction and within the reasonable exercise of
the police power from:

        1.  Regulating the standing or parking of vehicles,
    except as limited by Section 11-1306 of this Act;

        2.  Regulating traffic by means of police officers or
    traffic control signals;

        3.  Regulating    or    prohibiting    processions    or

Public Act 094-0795

HB4835 Enrolled                         LRB094 19060 DRH 54562 b

assemblages on the highways;

    4. Designating   particular   highways   as   one-way
highways and requiring that all vehicles thereon be moved
in one specific direction;

    5. Regulating the speed of vehicles in public parks
subject to the limitations set forth in Section 11-604;

    6. Designating any highway as a through highway, as
authorized in Section 11-302, and requiring that all
vehicles stop before entering or crossing the same or
designating any intersection as a stop intersection or a
yield right-of-way intersection and requiring all vehicles
to stop or yield the right-of-way at one or more entrances
to such intersections;

    7. Restricting the use of highways as authorized in
Chapter 15;

    8. Regulating the operation of bicycles and requiring
the registration and licensing of same, including the
requirement of a registration fee;

    9. Regulating or prohibiting the turning of vehicles
or specified types of vehicles at intersections;

    10. Altering   the   speed   limits   as   authorized   in
Section 11-604;

    11. Prohibiting U-turns;

    12. Prohibiting pedestrian crossings at other than
designated and marked crosswalks or at intersections;

    13. Prohibiting   parking   during   snow   removal
operation;

    14. Imposing   fines   in   accordance   with   Section
11-1301.3 as penalties for use of any parking place
reserved for persons with disabilities, as defined by
Section 1-159.1, or disabled veterans by any person using a
motor vehicle not bearing registration plates specified in
Section 11-1301.1 or a special decal or device as defined
in Section 11-1301.2 as evidence that the vehicle is
operated by or for a person with disabilities or disabled
veteran;

Public Act 094-0795

HB4835 Enrolled                          LRB094 19060 DRH 54562 b

        15.  Adopting such other traffic regulations as are
    specifically authorized by this Code; or

        16.  Enforcing the provisions of subsection (f) of
    Section 3-413 of this Code or a similar local ordinance.

    (b)  No ordinance or regulation enacted under subsections
1, 4, 5, 6, 7, 9, 10, 11 or 13 of paragraph (a) shall be
effective until signs giving reasonable notice of such local
traffic regulations are posted.

    (c)  The provisions of this Code shall not prevent any
municipality having a population of 500,000 or more inhabitants
from prohibiting any person from driving or operating any motor
vehicle upon the roadways of such municipality with headlamps
on high beam or bright.

    (d)  The provisions of this Code shall not be deemed to
prevent local authorities within the reasonable exercise of
their police power from prohibiting, on private property, the
unauthorized use of parking spaces reserved for persons with
disabilities.

    (e)  No unit of local government, including a home rule
unit, may enact or enforce an ordinance that applies only to
motorcycles if the principal purpose for that ordinance is to
restrict the access of motorcycles to any highway or portion of
a highway for which federal or State funds have been used for
the planning, design, construction, or maintenance of that
highway. No unit of local government, including a home rule
unit, may enact an ordinance requiring motorcycle users to wear
protective headgear. Nothing in this subsection (e) shall
affect the authority of a unit of local government to regulate
motorcycles for traffic control purposes or in accordance with
Section 12-602 of this Code. No unit of local government,
including a home rule unit, may regulate motorcycles in a
manner inconsistent with this Code. This subsection (e) is a
limitation under subsection (i) of Section 6 of Article VII of
the Illinois Constitution on the concurrent exercise by home
rule units of powers and functions exercised by the State.

    (f)  A municipality or county designated in Section

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

11-208.6 may enact an ordinance providing for an automated
traffic law enforcement system to enforce violations of this
Code or a similar provision of a local ordinance and imposing
liability on a registered owner of a vehicle used in such a
violation.
(Source: P.A. 90-106, eff. 1-1-98; 90-513, eff. 8-22-97;
90-655, eff. 7-30-98; 91-519, eff. 1-1-00.)


    (625 ILCS 5/11-208.3) (from Ch. 95 1/2, par. 11-208.3)
    Sec. 11-208.3. Administrative adjudication of violations
of traffic regulations concerning the standing, parking, or
condition of vehicles and automated traffic law violations.

    (a) Any municipality may provide by ordinance for a system
of administrative adjudication of vehicular standing and
parking violations and vehicle compliance violations as
defined in this subsection and automated traffic law violations
as defined in Section 11-208.6. The administrative system shall
have as its purpose the fair and efficient enforcement of
municipal regulations through the administrative adjudication
of automated traffic law violations and violations of municipal
ordinances regulating the standing and parking of vehicles, the
condition and use of vehicle equipment, and the display of
municipal wheel tax licenses within the municipality's
borders. The administrative system shall only have authority to
adjudicate civil offenses carrying fines not in excess of $250
that occur after the effective date of the ordinance adopting
such a system under this Section. For purposes of this Section,
"compliance violation" means a violation of a municipal
regulation governing the condition or use of equipment on a
vehicle or governing the display of a municipal wheel tax
license.

    (b) Any ordinance establishing a system of administrative
adjudication under this Section shall provide for:

        (1) A traffic compliance administrator authorized to
    adopt, distribute and process parking, and compliance, and
    automated traffic law violation notices and other notices

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

required by this Section, collect money paid as fines and
penalties for violation of parking and compliance
ordinances and automated traffic law violations, and
operate an administrative adjudication system. The traffic
compliance administrator also may make a certified report
to the Secretary of State under Section 6-306.5.

(2) A parking, standing, or compliance, or automated
traffic law violation notice that shall specify the date,
time, and place of violation of a parking, standing, or
compliance, or automated traffic law regulation; the
particular regulation violated; the fine and any penalty
that may be assessed for late payment, when so provided by
ordinance; the vehicle make and state registration number;
and the identification number of the person issuing the
notice. With regard to automated traffic law violations,
vehicle make shall be specified on the automated traffic
law violation notice if the make is available and readily
discernible. With regard to municipalities with a
population of 1 million or more, it shall be grounds for
dismissal of a parking violation if the State registration
number or vehicle make specified is incorrect. The
violation notice shall state that the payment of the
indicated fine, and of any applicable penalty for late
payment, shall operate as a final disposition of the
violation. The notice also shall contain information as to
the availability of a hearing in which the violation may be
contested on its merits. The violation notice shall specify
the time and manner in which a hearing may be had.

(3) Service of the parking, standing, or compliance
violation notice by affixing the original or a facsimile of
the notice to an unlawfully parked vehicle or by handing
the notice to the operator of a vehicle if he or she is
present and service of an automated traffic law violation
notice by mail to the address of the registered owner of
the cited vehicle as recorded with the Secretary of State
within 30 days after the Secretary of State notifies the

Public Act 094-0795

HB4835 Enrolled                    LRB094 19060 DRH 54562 b

municipality or county of the identity of the owner of the
vehicle, but in no event later than 90 days after the
violation. A person authorized by ordinance to issue and
serve parking, standing, and compliance violation notices
shall certify as to the correctness of the facts entered on
the violation notice by signing his or her name to the
notice at the time of service or in the case of a notice
produced by a computerized device, by signing a single
certificate to be kept by the traffic compliance
administrator attesting to the correctness of all notices
produced by the device while it was under his or her
control. In the case of an automated traffic law violation,
the ordinance shall require a determination by a technician
employed or contracted by the municipality or county that,
based on inspection of recorded images, the motor vehicle
was being operated in violation of Section 11-208.6 or a
local ordinance. If the technician determines that the
vehicle entered the intersection as part of a funeral
procession or in order to yield the right-of-way to an
emergency vehicle, a citation shall not be issued. The
original or a facsimile of the violation notice or, in the
case of a notice produced by a computerized device, a
printed record generated by the device showing the facts
entered on the notice, shall be retained by the traffic
compliance administrator, and shall be a record kept in the
ordinary course of business. A parking, standing, or
compliance, or automated traffic law violation notice
issued, signed and served in accordance with this Section,
a copy of the notice, or the computer generated record
shall be prima facie correct and shall be prima facie
evidence of the correctness of the facts shown on the
notice. The notice, copy, or computer generated record
shall be admissible in any subsequent administrative or
legal proceedings.

    (4) An opportunity for a hearing for the registered
owner of the vehicle cited in the parking, standing, or

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

compliance, or automated traffic law violation notice in
which the owner may contest the merits of the alleged
violation, and during which formal or technical rules of
evidence shall not apply; provided, however, that under
Section 11-1306 of this Code the lessee of a vehicle cited
in the violation notice likewise shall be provided an
opportunity for a hearing of the same kind afforded the
registered owner. The hearings shall be recorded, and the
person conducting the hearing on behalf of the traffic
compliance administrator shall be empowered to administer
oaths and to secure by subpoena both the attendance and
testimony of witnesses and the production of relevant books
and papers. Persons appearing at a hearing under this
Section may be represented by counsel at their expense. The
ordinance may also provide for internal administrative
review following the decision of the hearing officer.

    (5) Service of additional notices, sent by first class
United States mail, postage prepaid, to the address of the
registered owner of the cited vehicle as recorded with the
Secretary of State or, if any notice to that address is
returned as undeliverable, to the last known address
recorded in a United States Post Office approved database,
or, under Section 11-1306 of this Code, to the lessee of
the cited vehicle at the last address known to the lessor
of the cited vehicle at the time of lease or, if any notice
to that address is returned as undeliverable, to the last
known address recorded in a United States Post Office
approved database. The service shall be deemed complete as
of the date of deposit in the United States mail. The
notices shall be in the following sequence and shall
include but not be limited to the information specified
herein:

        (i) A second notice of parking, standing, or
    compliance violation. This notice shall specify the
    date and location of the violation cited in the
    parking, standing, or compliance violation notice, the

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

particular regulation violated, the vehicle make and
state registration number, the fine and any penalty
that may be assessed for late payment when so provided
by ordinance, the availability of a hearing in which
the violation may be contested on its merits, and the
time and manner in which the hearing may be had. The
notice of violation shall also state that failure
either to pay the indicated fine and any applicable
penalty, or to appear at a hearing on the merits in the
time and manner specified, will result in a final
determination of violation liability for the cited
violation in the amount of the fine or penalty
indicated, and that, upon the occurrence of a final
determination of violation liability for the failure,
and the exhaustion of, or failure to exhaust, available
administrative or judicial procedures for review, any
unpaid fine or penalty will constitute a debt due and
owing the municipality.

      (ii) A notice of final determination of parking,
standing, ~~or~~ compliance, or automated traffic law
violation liability. This notice shall be sent
following a final determination of parking, standing,
~~or~~ compliance, or automated traffic law violation
liability and the conclusion of judicial review
procedures taken under this Section. The notice shall
state that the unpaid fine or penalty is a debt due and
owing the municipality. The notice shall contain
warnings that failure to pay any fine or penalty due
and owing the municipality within the time specified
may result in the municipality's filing of a petition
in the Circuit Court to have the unpaid fine or penalty
rendered a judgment as provided by this Section, or may
result in suspension of the person's drivers license
for failure to pay fines or penalties for 10 or more
parking violations under Section 6-306.5 or 5 or more
automated traffic law violations under Section

Public Act 094-0795

HB4835 Enrolled                          LRB094 19060 DRH 54562 b

    11-208.6.

    (6) A Notice of impending drivers license suspension.
This notice shall be sent to the person liable for any fine
or penalty that remains due and owing on 10 or more parking
violations <u>or 5 or more unpaid automated traffic law
violations</u>. The notice shall state that failure to pay the
fine or penalty owing within 45 days of the notice's date
will result in the municipality notifying the Secretary of
State that the person is eligible for initiation of
suspension proceedings under Section 6-306.5 of this Code.
The notice shall also state that the person may obtain a
photostatic copy of an original ticket imposing a fine or
penalty by sending a self addressed, stamped envelope to
the municipality along with a request for the photostatic
copy. The notice of impending drivers license suspension
shall be sent by first class United States mail, postage
prepaid, to the address recorded with the Secretary of
State or, if any notice to that address is returned as
undeliverable, to the last known address recorded in a
United States Post Office approved database.

    (7) Final determinations of violation liability. A
final determination of violation liability shall occur
following failure to pay the fine or penalty after a
hearing officer's determination of violation liability and
the exhaustion of or failure to exhaust any administrative
review procedures provided by ordinance. Where a person
fails to appear at a hearing to contest the alleged
violation in the time and manner specified in a prior
mailed notice, the hearing officer's determination of
violation liability shall become final: (A) upon denial of
a timely petition to set aside that determination, or (B)
upon expiration of the period for filing the petition
without a filing having been made.

    (8) A petition to set aside a determination of parking,
standing, ~~or~~ compliance<u>, or automated traffic law</u>
violation liability that may be filed by a person owing an

Public Act 094-0795

HB4835 Enrolled                                    LRB094 19060 DRH 54562 b

unpaid fine or penalty. The petition shall be filed with
and ruled upon by the traffic compliance administrator in
the manner and within the time specified by ordinance. The
grounds for the petition may be limited to: (A) the person
not having been the owner or lessee of the cited vehicle on
the date the violation notice was issued, (B) the person
having already paid the fine or penalty for the violation
in question, and (C) excusable failure to appear at or
request a new date for a hearing. With regard to
municipalities with a population of 1 million or more, it
shall be grounds for dismissal of a parking violation if
the State registration number, or vehicle make if
specified, is incorrect. After the determination of
parking, standing, or compliance, or automated traffic law
violation liability has been set aside upon a showing of
just cause, the registered owner shall be provided with a
hearing on the merits for that violation.

(9) Procedures for non-residents. Procedures by which
persons who are not residents of the municipality may
contest the merits of the alleged violation without
attending a hearing.

(10) A schedule of civil fines for violations of
vehicular standing, parking, and compliance, or automated
traffic law regulations enacted by ordinance pursuant to
this Section, and a schedule of penalties for late payment
of the fines, provided, however, that the total amount of
the fine and penalty for any one violation shall not exceed
$250.

(11) Other provisions as are necessary and proper to
carry into effect the powers granted and purposes stated in
this Section.

(c) Any municipality establishing vehicular standing,
parking, and compliance, or automated traffic law regulations
under this Section may also provide by ordinance for a program
of vehicle immobilization for the purpose of facilitating
enforcement of those regulations. The program of vehicle

Public Act 094-0795

HB4835 Enrolled                                LRB094 19060 DRH 54562 b

immobilization shall provide for immobilizing any eligible
vehicle upon the public way by presence of a restraint in a
manner to prevent operation of the vehicle. Any ordinance
establishing a program of vehicle immobilization under this
Section shall provide:

(1) Criteria for the designation of vehicles eligible
for immobilization. A vehicle shall be eligible for
immobilization when the registered owner of the vehicle has
accumulated the number of unpaid final determinations of
parking, standing, or compliance, or automated traffic law
violation liability as determined by ordinance.

(2) A notice of impending vehicle immobilization and a
right to a hearing to challenge the validity of the notice
by     disproving     liability     for     the     unpaid     final
determinations of parking, standing, or compliance, or
automated traffic law violation liability listed on the
notice.

(3) The right to a prompt hearing after a vehicle has
been immobilized or subsequently towed without payment of
the outstanding fines and penalties on parking, standing,
or compliance, or automated traffic law violations for
which final determinations have been issued. An order
issued after the hearing is a final administrative decision
within the meaning of Section 3-101 of the Code of Civil
Procedure.

(4) A post immobilization and post-towing notice
advising the registered owner of the vehicle of the right
to a hearing to challenge the validity of the impoundment.

(d) Judicial review of final determinations of parking,
standing, and compliance, or automated traffic law violations
and final administrative decisions issued after hearings
regarding vehicle immobilization and impoundment made under
this Section shall be subject to the provisions of the
Administrative Review Law.

(e) Any fine, penalty, or part of any fine or any penalty
remaining unpaid after the exhaustion of, or the failure to

Public Act 094-0795

HB4835 Enrolled                          LRB094 19060 DRH 54562 b

exhaust, administrative remedies created under this Section
and the conclusion of any judicial review procedures shall be a
debt due and owing the municipality and, as such, may be
collected in accordance with applicable law. Payment in full of
any fine or penalty resulting from a standing, parking, or
compliance, or automated traffic law violation shall
constitute a final disposition of that violation.

    (f) After the expiration of the period within which
judicial review may be sought for a final determination of
parking, standing, or compliance, or automated traffic law
violation, the municipality may commence a proceeding in the
Circuit Court for purposes of obtaining a judgment on the final
determination of violation. Nothing in this Section shall
prevent a municipality from consolidating multiple final
determinations of parking, standing, or compliance, or
automated traffic law violations violation against a person in
a proceeding. Upon commencement of the action, the municipality
shall file a certified copy or record of the final
determination of parking, standing, or compliance, or
automated traffic law violation, which shall be accompanied by
a certification that recites facts sufficient to show that the
final determination of violation was issued in accordance with
this Section and the applicable municipal ordinance. Service of
the summons and a copy of the petition may be by any method
provided by Section 2-203 of the Code of Civil Procedure or by
certified mail, return receipt requested, provided that the
total amount of fines and penalties for final determinations of
parking, standing, or compliance, or automated traffic law
violations does not exceed $2500. If the court is satisfied
that the final determination of parking, standing, or
compliance, or automated traffic law violation was entered in
accordance with the requirements of this Section and the
applicable municipal ordinance, and that the registered owner
or the lessee, as the case may be, had an opportunity for an
administrative hearing and for judicial review as provided in
this Section, the court shall render judgment in favor of the

Public Act 094-0795

HB4835 Enrolled                          LRB094 19060 DRH 54562 b

municipality and against the registered owner or the lessee for
the amount indicated in the final determination of parking,
standing, ~~or~~ compliance, or automated traffic law violation,
plus costs. The judgment shall have the same effect and may be
enforced in the same manner as other judgments for the recovery
of money.

(Source: P.A. 94-294, eff. 1-1-06.)


     (625 ILCS 5/11-208.6 new)

     Sec. 11-208.6. Automated traffic law enforcement system.

     (a) As used in this Section, "automated traffic law
enforcement system" means a device with one or more motor
vehicle sensors working in conjunction with a red light signal
to produce recorded images of motor vehicles entering an
intersection against a red signal indication in violation of
Section 11-306 of this Code or a similar provision of a local
ordinance.

     An automated traffic law enforcement system is a system, in
a municipality or county operated by a governmental agency,
that produces a recorded image of a motor vehicle's violation
of a provision of this Code or a local ordinance and is
designed to obtain a clear recorded image of the vehicle and
the vehicle's license plate. The recorded image must also
display the time, date, and location of the violation.

     (b) As used in this Section, "recorded images" means
images recorded by an automated traffic law enforcement system
on:

          (1) 2 or more photographs;

          (2) 2 or more microphotographs;

          (3) 2 or more electronic images; or

          (4) a video recording showing the motor vehicle and,
     on at least one image or portion of the recording, clearly
     identifying the registration plate number of the motor
     vehicle.

     (c) A county or municipality, including a home rule county
or municipality, may not use an automated traffic law

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

enforcement system to provide recorded images of a motor
vehicle for the purpose of recording its speed. The regulation
of the use of automated traffic law enforcement systems to
record vehicle speeds is an exclusive power and function of the
State. This subsection (c) is a denial and limitation of home
rule powers and functions under subsection (h) of Section 6 of
Article VII of the Illinois Constitution.

    (d)  For each violation of a provision of this Code or a
local ordinance recorded by an automatic traffic law
enforcement system, the county or municipality having
jurisdiction shall issue a written notice of the violation to
the registered owner of the vehicle as the alleged violator.
The notice shall be delivered to the registered owner of the
vehicle, by mail, within 30 days after the Secretary of State
notifies the municipality or county of the identity of the
owner of the vehicle, but in no event later than 90 days after
the violation.

    The notice shall include:

        (1)  the name and address of the registered owner of
    the vehicle;

        (2)  the registration number of the motor vehicle
    involved in the violation;

        (3)  the violation charged;

        (4)  the location where the violation occurred;

        (5)  the date and time of the violation;

        (6)  a copy of the recorded images;

        (7)  the amount of the civil penalty imposed and the
    date by which the civil penalty should be paid;

        (8)  a statement that recorded images are evidence of a
    violation of a red light signal;

        (9)  a warning that failure to pay the civil penalty or
    to contest liability in a timely manner is an admission of
    liability and may result in a suspension of the driving
    privileges of the registered owner of the vehicle; and

        (10) a statement that the person may elect to proceed
    by:

Public Act 094-0795

HB4835 Enrolled                          LRB094 19060 DRH 54562 b

    (A)   paying the fine; or

    (B)   challenging the charge in court, by mail, or
by administrative hearing.

(e)  If a person charged with a traffic violation, as a
result of an automated traffic law enforcement system, does not
pay or successfully contest the civil penalty resulting from
that violation, the Secretary of State shall suspend the
driving privileges of the registered owner of the vehicle under
Section 6-306.5 of this Code for failing to pay any fine or
penalty due and owing as a result of 5 violations of the
automated traffic law enforcement system.

(f)  Based on inspection of recorded images produced by an
automated traffic law enforcement system, a notice alleging
that the violation occurred shall be evidence of the facts
contained in the notice and admissible in any proceeding
alleging a violation under this Section.

(g)  Recorded images made by an automatic traffic law
enforcement system are confidential and shall be made available
only to the alleged violator and governmental and law
enforcement agencies for purposes of adjudicating a violation
of this Section, for statistical purposes, or for other
governmental purposes. Any recorded image evidencing a
violation of this Section, however, may be admissible in any
proceeding resulting from the issuance of the citation.

(h)  The court or hearing officer may consider in defense
of a violation:

(1)  that the motor vehicle or registration plates of
the motor vehicle were stolen before the violation occurred
and not under the control of or in the possession of the
owner at the time of the violation;

(2)  that the driver of the vehicle passed through the
intersection when the light was red either (i) in order to
yield the right-of-way to an emergency vehicle or (ii) as
part of a funeral procession; and

(3)  any other evidence or issues provided by
municipal or county ordinance.

Public Act 094-0795

HB4835 Enrolled                                LRB094 19060 DRH 54562 b

    (i)  To  demonstrate  that  the  motor  vehicle  or  the
registration plates were stolen before the violation occurred
and were not under the control or possession of the owner at
the time of the violation, the owner must submit proof that a
report  concerning  the  stolen  motor  vehicle  or  registration
plates  was  filed  with  a  law  enforcement  agency  in  a  timely
manner.

    (j)  Unless  the  driver  of  the  motor  vehicle  received  a
Uniform Traffic Citation from a police officer at the time of
the violation, the motor vehicle owner is subject to a civil
penalty not exceeding $100, plus an additional penalty of not
more than $100 for failure to pay the original penalty in a
timely manner, if the motor vehicle is recorded by an automated
traffic law enforcement system. A violation for which a civil
penalty  is  imposed  under  this  Section  is  not  a  violation  of  a
traffic regulation governing the movement of vehicles and may
not  be  recorded  on  the  driving  record  of  the  owner  of  the
vehicle.

    (k)  An  intersection  equipped  with  an  automated  traffic
law enforcement system must be posted with a sign visible to
approaching traffic indicating that the intersection is being
monitored by an automated traffic law enforcement system.

    (l)  The  compensation  paid  for  an  automated  traffic  law
enforcement system must be based on the value of the equipment
or the services provided and may not be based on the number of
traffic  citations  issued  or  the  revenue  generated  by  the
system.

    (m)  This  Section  applies  only  to  the  counties  of  Cook,
DuPage, Kane, Lake, Madison, McHenry, St. Clair, and Will and
to municipalities located within those counties.


    (625 ILCS 5/11-306)  (from Ch. 95 1/2, par. 11-306)
    Sec.  11-306.  Traffic-control  signal  legend.  Whenever
traffic  is  controlled  by  traffic-control  signals  exhibiting
different colored lights or color lighted arrows, successively
one at a time or in combination, only the colors green, red and

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

yellow shall be used, except for special pedestrian signals
carrying a word legend, and the lights shall indicate and apply
to drivers of vehicles and pedestrians as follows:

(a)  Green indication.

1.  Vehicular traffic facing a circular green signal
may proceed straight through or turn right or left unless a
sign at such place prohibits either such turn. Vehicular
traffic, including vehicles turning right or left, shall
yield the right of way to other vehicles and to pedestrians
lawfully within the intersection or an adjacent crosswalk
at the time such signal is exhibited.

2.  Vehicular traffic facing a green arrow signal,
shown alone or in combination with another indication, may
cautiously enter the intersection only to make the movement
indicated by such arrow, or such other movement as is
permitted by other indications shown at the same time. Such
vehicular traffic shall yield the right of way to
pedestrians lawfully within an adjacent crosswalk and to
other traffic lawfully using the intersection.

3.  Unless otherwise directed by a pedestrian-control
signal, as provided in Section 11-307, pedestrians facing
any green signal, except when the sole green signal is a
turn arrow, may proceed across the roadway within any
marked or unmarked crosswalk.

(b)  Steady yellow indication.

1.  Vehicular traffic facing a steady circular yellow
or yellow arrow signal is thereby warned that the related
green movement is being terminated or that a red indication
will be exhibited immediately thereafter.

2.  Pedestrians facing a steady circular yellow or
yellow arrow signal, unless otherwise directed by a
pedestrian-control signal as provided in Section 11-307,
are thereby advised that there is insufficient time to
cross the roadway before a red indication is shown and no
pedestrian shall then start to cross the roadway.

(c)  Steady red indication.

Public Act 094-0795

HB4835 Enrolled                    LRB094 19060 DRH 54562 b

   1. Except as provided in paragraph 3 of this
subsection (c), vehicular traffic facing a steady circular
red signal alone shall stop at a clearly marked stop line,
but if there is no such stop line, before entering the
crosswalk on the near side of the intersection, or if there
is no such crosswalk, then before entering the
intersection, and shall remain standing until an
indication to proceed is shown.

   2. Except as provided in paragraph 3 of this
subsection (c), vehicular traffic facing a steady red arrow
signal shall not enter the intersection to make the
movement indicated by the arrow and, unless entering the
intersection to make a movement permitted by another
signal, shall stop at a clearly marked stop line, but if
there is no such stop line, before entering the crosswalk
on the near side of the intersection, or if there is no
such crosswalk, then before entering the intersection, and
shall remain standing until an indication permitting the
movement indicated by such red arrow is shown.

   3. Except when a sign is in place prohibiting a turn
and local authorities by ordinance or State authorities by
rule or regulation prohibit any such turn, vehicular
traffic facing any steady red signal may cautiously enter
the intersection to turn right, or to turn left from a
one-way street into a one-way street, after stopping as
required by paragraph 1 or paragraph 2 of this subsection.
After stopping, the driver shall yield the right of way to
any vehicle in the intersection or approaching on another
roadway so closely as to constitute an immediate hazard
during the time such driver is moving across or within the
intersection or junction or roadways. Such driver shall
yield the right of way to pedestrians within the
intersection or an adjacent crosswalk.

   4. Unless otherwise directed by a pedestrian-control
signal as provided in Section 11-307, pedestrians facing a
steady circular red or red arrow signal alone shall not

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

enter the roadway.

~~5. A municipality with a population of 1,000,000 or~~
~~more may enact an ordinance that provides for the use of an~~
~~automated red light enforcement system to enforce~~
~~violations of this subsection (c) that result in or involve~~
~~a motor vehicle accident, leaving the scene of a motor~~
~~vehicle accident, or reckless driving that results in~~
~~bodily injury.~~

~~This paragraph 5 is subject to prosecutorial~~
~~discretion that is consistent with applicable law.~~

(d)  In the event an official traffic control signal is
erected and maintained at a place other than an intersection,
the provisions of this Section shall be applicable except as to
provisions which by their nature can have no application. Any
stop required shall be at a traffic sign or a marking on the
pavement indicating where the stop shall be made or, in the
absence of such sign or marking, the stop shall be made at the
signal.

(e)  The motorman of any streetcar shall obey the above
signals as applicable to vehicles.

(Source: P.A. 90-86, eff. 7-10-97; 91-357, eff. 7-29-99.)


(625 ILCS 5/11-612 new)

Sec. 11-612. Certain systems to record vehicle speeds
prohibited. Except as authorized in the Automated Traffic
Control Systems in Highway Construction or Maintenance Zones
Act, no photographic, video, or other imaging system may be
used in this State to record vehicle speeds for the purpose of
enforcing any law or ordinance regarding a maximum or minimum
speed limit unless a law enforcement officer is present at the
scene and witnesses the event. No State or local governmental
entity, including a home rule county or municipality, may use
such a system in a way that is prohibited by this Section. The
regulation of the use of such systems is an exclusive power and
function of the State. This Section is a denial and limitation
of home rule powers and functions under subsection (h) of

Public Act 094-0795

HB4835 Enrolled                              LRB094 19060 DRH 54562 b

Section 6 of Article VII of the Illinois Constitution.

    (625 ILCS 5/1-105.5 rep.)

    Section 10. The Illinois Vehicle Code is amended by repealing Section 1-105.5.

    Section 99. Effective date. This Act takes effect upon becoming law.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH M. KEATING and<br>PAUL W. KETZ, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| vs. | ) ) | |
| REDSPEED ILLINOIS, LLC., REDFLEX<br>TRAFFIC SYSTEMS, INC., CITY OF<br>CHICAGO, and BEA REYNA-HICKEY, | ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

# EXHIBIT B

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2330 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

No.

10CH28652

ELIZABETH KEATING AND PAUL KETZ,

(Name all parties)

v.

REDFLEX TRAFFIC SYSTEMS, INC., et al

RedFlex Traffic Systems, Inc.
c/o National Registered Agents, Inc.
200 W. Adams Street
Chicago, IL 60606

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 , Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 42877

Name: Patrick J. Keating / O'Hagan Spencer LLC

Atty. for: Plaintiffs

Address: One E. Wacker Drive, Suite 3400

City/State/Zip: Chicago, IL 60601

Telephone: (312) 422-6135

WITNESS, JUL 02 2010

DOROTHY BROWN

Clerk of Court

Date of service:
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: 312-422-6131

(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# NATIONAL REGISTERED AGENTS, INC.

## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: JOHN JACOBS
REDFLEX GENERAL COUNSEL
23751 N 23RD AVE #150
PHOENIX, AZ 85085-1854

SOP Transmittal # **IL67970**

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Entity Served: REDFLEX TRAFFIC SYSTEMS, INC. (Domestic State: DELAWARE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of    **ILLINOIS**        on this  **14**  day of        July        , **2010**   . The following is a summary of the document(s) received:

1.      Title of Action: Elizabeth Keating and Paul Ketz -vs- RedFlex Traffic Systems, Inc., et.al.

2.      Document(s) served: Summons/Citation/Third Party Summons, Complaint/Petition/Third Party Complaint

3.      **Court of Jurisdiction/**       Circuit Court Cook County, IL
        **Case & Docket Number:** 10CH28652

4.      **Amount Claimed, if any:**

5.      **Method of Service** (select one):
        **X** Personally served by:    **X** Process Server              __ Deputy Sheriff           __ U. S Marshall
        __ Delivered Via:                __ Certified Mail                __ Regular Mail             __ Facsimile
                                         (Envelope enclosed)            (Envelope enclosed)

        __ Other (Explain):

6.      **Date and Time of Receipt:** 7/14/2010 1:04:17 PM EST (GMT -5)

7.      **Appearance/Answer Date:** 30 Days

8.      **Received From:**               Patrick J. Keating          9.  **Federal Express Airbill #** 790228031965
        (Name, Address & Telephone Number)  O'Hagen Spencer, LLC
                                         One E. Wacker Drive        10. **Call Made to:** Telephone Disconnected
                                         Suite 3400
                                         Chicago, IL 60601
                                         312-422-6135

11.     **Special Comments:**
This SOP was NOT scanned (The document cannot be separated without destroying it. (Exception)) and JOHN JACOBS was notified via email.

**NATIONAL REGISTERED AGENTS, INC.**                    **Copies To:**

Transmitted by Courtney Hightower

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action

**ORIGINAL**

## CERTIFICATE OF SERVICE

Jenny S. Kim, an attorney, hereby certifies that she caused a copy of the **Notice of Removal** to be served on:

Patrick J. Keating
O'Hagan Spencer LLC
One E. Wacker Drive, Suite 3400
Chicago, IL 60601

Litchfield Cavo, LLP
303 W. Madison #300
Chicago, IL 60606

Karen M. Dorff
Rachel D. Powell
City of Chicago Dept. of Law
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602

Harvey J. Barnett
200 W. Adams, Suite 2220
Chicago, IL 60606

Johnson Bell Ltd.
33 W. Monroe #2700
Chicago, IL 60603

via U.S. Mail, postage prepaid, at 2 North LaSalle Street, Chicago, Illinois, on the 11th day of August, 2010.

/s/ Jenny S. Kim